[Civil No. 3006. Filed July 3, 1931.]

[300 Pac. 1004.]

J. C. SHARP, Appellant, v. CHAS. OSBORNE,
Appellee.

Mr. Sidney Sapp and Mr. Hess Seaman, for Appellant.

Mr. W. E. Ferguson, for Appellee.

ROSS, J.—The plaintiff, J. C. Sharp, alleges in his complaint that on September 6, 1928, he bought of the defendant, Chas. Osborne, fifty head of two and three year old steers, ten head of bulls and stags, and forty head of cows, all Navajo Indian cattle, and paid therefor the lump sum of $2,000; that at the time he paid for the cattle he received a bill of sale from Osborne, but that Osborne had failed and refused to deliver the cattle to him; that by reason thereof Osborne is indebted to plaintiff in the sum of $2,000, together with legal interest from September 8, 1928.

Defendant answered and, in effect, admitted making the bill of sale of cattle, the payment to him of $2,000 as alleged, and also that he had not delivered the cattle described in the bill of sale to plaintiff. He justifies his failure to deliver the cattle on the ground that plaintiff had failed, according to his allegations, to keep and perform another contract between them dated June 18, 1928. To his answer he attached a copy of the June contract. We give its substance only. Under it Osborne agreed to sell to Sharp Navajo cattle bought by him during 1928, of the kinds and at the prices hereinafter set out, and to deliver them free of charge on board the Santa Fe Railroad at the stations of Holbrook or Pinta, to wit:

"Rough steers at one dollar per hundred less than other steers.
"Dry cows 3 to 9 years old, at $5.00 per cwt.

"Bulls & Stags, at $5.00 per cwt.

"2 year old steers and over at $7.00 per hundred or at $1.50 per hundred less than American twos and threes bring here this fall."

Under this contract Sharp was to advance to Osborne $10 per head on 300 head, or $3,000, for which amount he was to be credited on the purchase price of said cattle in the final settlement, unless Sharp should refuse to accept and pay for the cattle when properly delivered, in which case the $10 per head advanced was to be forfeited to Osborne. These are the terms of the contract material to this case.

The breach of this contract by plaintiff is alleged as a defense in defendant's answer as follows:

"That on the 21st day of September, 1928, and before the close of the buying season for cattle on the Indian Reservations where said cattle were to be bought under the terms of said contract, plaintiff breached his said contract, and refused to further receive and pay for cattle bought and contracted for him by the defendant; and that at the time of refusal, the defendant had purchased from various people on the Navajo Indian Reservation cattle which under the terms of the contract would have yielded him a profit of $4,116.39 ($4,818.89 trial amendment), $2,116.39 more than the plaintiff had remaining of the $3,000.00-deposit with the defendant. That the plaintiff well knew that the defendant had purchased cattle for him under the terms of the contract, and that his breach of the said contract, was willful and without the consent of the defendant.

"That on the said 21st day of September, 1928, the plaintiff notified the defendant that he would proceed no further in accepting or receiving said cattle so bought for him under the terms of the contract, and for the reason that the 21st of September 1928 was so far along in the buying season and sellers of cattle had already made arrangements with purchasers and other purchasers had made their arrangements with sellers, there was no market to which the said defendant could dispose of the cattle otherwise and

make his said profit hereinabove set forth and referred to.''

The same facts as those alleged as a defense are set out by defendant in a cross-complaint, and damages prayed in the sum of $4,116.39 (trial amendment $4,818.89).

The plaintiff, in addition to demurring generally to defendant's answer and cross-complaint, filed a motion to make them more definite and certain by requiring defendant ''to set out the names of each person or company or corporation from which the defendant had purchased any cattle on or before the twenty-first day of September, 1928,'' also number and kind of cattle so purchased. He also filed a general denial.

Although the court did not pass on the demurrer or the motion to make more definite and certain, the defendant and cross-complainant filed the following paper, which he called a ''supplement'':

''Supplement to Answer and Cross-Complaint.

''Comes now the defendant and cross-complainant by leave of court first had and obtained and files this supplement to his answer and cross-complaint, giving number of cattle mentioned in his answer and cross-complaint, classification of kinds, buying price, market value of same and his loss of profit, to-wit:''

(Here is set out what purports to be lists of cattle, under headings as follows: ''Item 1,'' ''Item 2,'' ''Item 3,'' ''Item 4,'' ''Item 5'' and ''Item 6,'' showing kind sold to plaintiff prior to September 21st, together with prices charged and credits allowed— all of which was outside of the issues made by defendant's answer and cross-complaint.)

The case was tried before a jury, and resulted in a verdict in favor of the defendant in the sum of $2,235.50, upon which judgment was entered. The plaintiff made a motion for a new trial upon several

grounds, and the motion was overruled. The appeal is from the judgment and the order overruling the motion for a new trial.

Before discussing the assignments of error, we wish to call attention to the pleadings and the issues as they appear to us. The plaintiff's cause of action is one to recover the purchase price of some cattle that he bought of defendant and paid for but did not receive; in other words, he is asking the defendant to return to him his $2,000, with interest, since the cattle he was to receive therefor were not delivered. The defendant admits plaintiff's claim, but says he should not be required to return the $2,000 to plaintiff, because the plaintiff had on September 21st refused "further" to accept and pay for cattle bought and contracted for by defendant under the terms of their contract dated June 18, 1928, to defendant's damage in the sum of $4,116.39, enlarged by trial amendment to $4,818.89. The breach is laid as of September 21, 1928, and consists, as alleged in the answer and cross-complaint, in a refusal "to further receive and pay for cattle bought and contracted for him by the defendant." There is no allegation that defendant had delivered or offered to deliver to plaintiff on board the cars at the railroad stations of Holbrook or Pinta, at the prices named in the contract of June 18th, any cattle of the kind or character described therein. Under the contract of June 18th, plaintiff did not agree to take any and all kinds of cattle defendant might buy, but particular kinds, at specified prices, delivered on board the train at one of the above-named stations.

One of the errors assigned is the court's failure to sustain the general demurrer to the answer and cross-complaint, and, since the former failed to allege facts showing plaintiff had breached his contract, it is clear no defense was set out, and, for the same rea-

son, no cross-action was sufficiently alleged. The demurrer should have been sustained.

A more fundamental error arises on the proof and it also was urged as a ground for a new trial. As above stated, the breach alleged is of September 21, 1928, and consists in a refusal to further perform the contract by receiving cattle bought and contracted for by defendant for plaintiff. The evidence is in accord that the parties had some kind of settlement on September 21st. Defendant admitted in his testimony that he and Sharp had a settlement on that day and that Sharp drew down, with defendant's consent, a deposit of $3,000 and told the defendant he would take no more cattle from him. Defendant testified, when asked if they did not have a settlement on that date: "Yes, we figured up, and he gave me what he wanted to." Notwithstanding this settlement, the defendant was permitted to introduce evidence of alleged oral contracts of sale of cattle, of kinds and grades not mentioned in the contract, on dates prior to September 21, 1928, in support of the alleged breach of that date. If on September 21st defendant had on hand or had contracted for any cattle plaintiff's agreement required him to accept and pay for, he failed to show it by his testimony. There is some evidence tending to show that defendant after that date, and after the deposit of $3,000 was taken down, contracted some Indian cattle. But the breach alleged is a refusal to accept cattle bought and contracted for by defendant before that date, and not after.

Under the issues, the court should have confined the evidence to proving the damages alleged to have occurred by reason of the breach of September 21st and, when on the motion for new trial it was called to the court's attention that there had been no evidence introduced showing damages on account of said alleged breach, it should have granted the motion.

Under the pleadings, the verdict as returned is uncertain. There is no question but that the plaintiff was entitled to recover on his cause of action the sum of $2,000. The jury returned no verdict either for or against him. The defendant claimed damages in excess of $4,800 in his cross-complaint. The verdict was in favor of the defendant in the sum of $2,235.50. It is not possible to determine from the verdict whether or not the jury intended to allow the defendant on his cross-complaint, after crediting the plaintiff with the $2,000 defendant owed him, the sum of $2,235.50. The statute, section 3786, Revised Code of 1928, provides that, if the defendant is successful in establishing his counterclaim against the plaintiff in an amount exceeding that established against defendant by the plaintiff the court shall render judgment for the defendant for such excess. Had the jury done its duty, it would have returned a verdict in favor of the plaintiff for $2,000, together with interest from the eighth day of September, 1928. It would then have returned a verdict, in case it believed defendant had established his counterclaim in favor of the latter in an amount to which he had shown himself entitled under the evidence. If such amount exceeded that recovered by the plaintiff the court would then under the statute have rendered judgment for such excess in favor of defendant.

Although this last point is not urged by the plaintiff as a ground of reversal, we think it so fundamental as to require attention.

For the various reasons given, the court should have granted plaintiff's motion for a new trial.

The judgment of the lower court is reversed and the cause remanded for further proceedings in accordance herewith.

McALISTER, C. J., and LOCKWOOD, J., concur.